DECISION
On March 22, 1999. the Rhode Island Supreme Court decidedHall v. Insurance Co. of N. America, et al, No. 97-483-Appeal, slip op. (R.I. March 22, 1999) (Hall II) allowing hearing justices to make a preliminary finding regarding whether prior to adding a new defendant, plaintiff acted with due diligence in discovering the identity of the previously unknown defendant. This is the first case to be decided by an Associate Justice of the Superior Court under Hall II.
In January, these parties were before this Court on Defendant's motion for summary judgment. After denying Defendant's motion, this Court scheduled the instant pre-trial hearing, as permitted by Hall II, in order to evaluate Dr. Schachne's statute of limitations argument. The issue before this Court is whether Plaintiff; Susan Cotsoridis, has satisfied the applicable statutory requirements of due diligence or reasonable diligence pursuant to R.I.G.L. § 9-1-14.1 and 10-7-2 in joining Defendant four years after decedent's death.
This medical malpractice action was precipitated by the August 5, 1993 death of Peter Cotsoridis, husband of plaintiff Susan Cotsoridis and father of plaintiff Jason Cotsoridis. The decedent had a history of illness, not the least of which was heart disease. He bad treated with both defendants.
On August 4, 1993, the decedent kept a scheduled appointment with Dr. Johnson at which time he told Dr. Johnson that he was suffering from chest and shoulder pain. The pain continued to plague the decedent through the night and into the next day at which time he decided to go back to see Dr. Johnson. It was on the way to the doctor's office that the decedent suffered a fatal heart attack.
Dr. Johnson's records, obtained by Plaintiffs in December 1994, reveal that Dr. Johnson contacted Dr. Schachne after Mr. Cotsoridis came to his office complaining of chest and shoulder pain. Initially, the plaintiffs instituted this suit only against Dr. Johnson because, they claim, they were unaware of this consultation between Dr. Johnson and Dr. Schachne. The plaintiffs initially claimed that they first became aware of this consultation after obtaining Dr. Johnson's medical records. Dr. Schachne was added as a party in 1997.
Dr. Schachne moved for summary judgment in his favor under Rule 56 of the Superior Court Rules of Civil Procedure. The defendant set forth two grounds in support of his motion. First, the Defendant argued that the "plaintiffs' claims against Dr. Schachne are barred as a matter of law due to plaintiffs' failure to add Dr. Schachne as a defendant until after the expiration of the applicable statute of limitations period? Second, the defendant argued that "the plaintiffs' claims against Dr. Schachne do not relate back to the date of the original complaint".
This Court denied the motion to dismiss, finding sufficient issues of material fact to be in dispute. As previously stated, the Court reserved its finding on the statute of limitations and relation-back arguments until the instant hearing was conducted.
Plaintiffs argue that Dr. Schachne was added in a timely manner under the provisions of § 9-1-14A(b)[1] and 10-7-2. They contend that the earliest date on which this Court could base a finding that they, through the exercise of reasonable diligence, should have discovered Dr. Schachne's involvement, was December 1994. In so finding, Plaintiffs argue, Dr. Schachne's addition to the suit would fall within the statute of mutations and Rule 15 (c) would not apply.
 Due Diligence
The Court first considers Plaintiffs' due diligence argument. Whether reasonable diligence was exercised is a question of fact to be determined by "a justice of the Superior Court as a preliminary issue preceding the determination of whether the statute of limitations had run prior to the addition of this defendant" Hall v. Insurance Co. of N. America, 666 A.2d 805 (R.I. 1995) (Hall I).
Rhode Island General Laws § 10-7-2 sets forth the "reasonable diligence" standard. Section 10-7-2 requires that "with respect to any death caused by any wrongful act, neglect or default which is not known at the time of the death, such action shall be commenced within three (3) years of the time that the wrongful act, neglect or default is discovered or, in the exercise of reasonable diligence, should have been discovered."
The Plaintiffs argue that it was not until Dr. Johnson's deposition that they learned that Dr. Johnson had spoken with Dr. Schachne on the day Mr. Cotsoridis visited Dr. Johnson's office and that they had discussed whether hospitalization was necessary given Mr. Cotsoridis' complaints and medical history. At the very least, Plaintiffs argue, it was not until December 1994, when Plaintiffs received Dr. Johnson's medical records, that they knew the two doctors had even spoken.[2]
The Defendant argues that an exercise of reasonable diligence would have led the Plaintiffs to know of Dr. Schachne's involvement vis-à-vis the telephone call with Dr. Johnson. In support of this contention, the Defendant submitted a copy of a deposition which seeks to establish that the decedent's sister, Christine Cotsoridis, visited with Dr. Schachne at Charlton Memorial Hospital on the day after her brother died and that "at least once, if not twice or three times . . . [Dr. Schachne told her that he] did not feel responsible." (Deposition, p. 4). In her deposition. Ms. Cotsoridis also claims that she made the family aware of this conversation with Dr. Schachne soon after it occurred.
The Plaintiffs refute these claims and, in her own affidavit, claims that she was not aware nor could she have been aware of Dr. Schachne's involvement until 1994. In a response memorandum, Plaintiffs argue that "it is very possible that Christine Cotsoridis' recollection with regard to what she told the family concerning her conversation with Dr. Schachne is not completely accurate." Plaintiffs then cite several inconsistencies between the depositions of both defendants and the timing of events Ms. Cotsoridis described.
It is this Court's conclusion that the issues presented by Christine Cotsoridis' deposition are issues of fact still in controversy. The arguments from both sides are made in good faith and therefore, carry the same weight at this time. Therefore, the deposition is not considered persuasive to the Court for the purposes of determining due diligence.
In attempting to ascertain those actions which do or do not constitute due diligence, this Court looks to the highest Court in the state for guidance. In Hall II, three years and nine months after the statute of limitations period expired, Plaintiff amended his complaint to add the architect of the building in which Plaintiff was injured. When it reached the Supreme Court, the case was remanded for a finding on the issue of due diligence. The Superior Court ten found that "due diligence" standard had not been met. "Even the simplest site visit by the plaintiff or a representative of the plaintiff to the place where the plaintiff claims to have been injured would have brought the plaintiff or his representative into plain view of the dedicatory plaque." Id.
The Rhode Island Supreme Court also recently decided Dionnev. Baute, M.D., 589 A.2d 833 (R.I. 1991). The facts in Dionne
are similar to those presently before this Court. Mrs. Dionne's husband had a history of problems associated with his heart and had been treating with a cardiologist since 1974. In 1983, her husband presented in the Kent County emergency room with complaints of chest pain and left arm numbness. Id. He was examined by the emergency room doctor who then telephoned the office of the husband's treating cardiologist. The on-call physician at that office spoke with the emergency room doctor and was told that the symptoms had abated and the patient was being released. Approximately fourteen days later, the patient suffered a fatal heart attack.
Mrs. Dionne did not name the on-call physician until three years after filing her original suit. She claimed that she did not know of the physician's involvement when she instituted the suit. The Supreme Court dismissed the claim against this physician, finding that Mrs. Dionne had not exercised reasonable or due diligence.
Citing Anthony v. Abbott Laboratories, 490 A.2d 43, 46 (R.I. 1985), the Court said, "when applied to medical-malpractice claim, we believe that this analysis suggests that it was necessary for a plaintiff to investigate diligently who may or may not have had any exposure to liability during treatment. Id.
"Having gained access to her husband's records in 1984. Mrs. Dianne was thereby obligated, in our opinion, to have examined those documents in a thorough and diligent maimer." Id.
This Court has struggled with the facts of the Cotsoridis case from the first. It is not clear to this Court why. after Peter Cotsoridis died, the family did not immediately contact decedent's cardiologist to discuss the cause of decedent's death and any contact Dr. Schachne might have had with Dr. Johnson regarding decedent's treatment, simply as a matter of course. This decedent had a history of heart ailments. He had been treating with the same cardiologist for about eight years. He died of cardiac arrest.
However, this Court believes the representations of Plaintiffs' counsel that the Plaintiffs, for whatever reason, after exercising due diligence, did not become aware of Dr. Schachne's contact with Dr. Johnson until December 1994. Unlike the Plaintiff in Dionne, the Plaintiffs, currently before this Court, after receiving the appropriate medical records conducted a thorough and diligent investigation to ascertain who was involved in the treatment of the decedent. Dr. Schachne's records did not make note of his conversation with Dr. Johnson. It was Dr. Johnson's notes that mentioned the contact between the two physicians.
Therefore, this Court finds that the Plaintiffs exercised reasonable and due diligence in ascertaining Dr. Schachne's involvement and that they had no way of knowing Dr. Schachne's involvement until they received Dr. Johnson's notes in December 1994.
 Statute of Limitations
Under Rhode Island General Laws § 10-7-2, any suit alleging death caused by wrongful act or neglect commences three years from the time that the act is discovered. Consistent with his other arguments, Defendant contends that the statute of limitations began running on the date of Mr. Cotsoridis' death for both Dr. Schachne and Dr. Johnson. Since Dr. Schachne was not added until 1997, he was added after to statute of limitations expired. Therefore, Defendant argues, in order for Dr. Schachne to remain in this law suit, the Court must conduct a Rule 15 (c) analysis under Hall v. Insurance Co. of N. America, et Al, No. 97-483-Appeal, slip op. (R.I., March 22, 1999) (Hall II).
Plaintiffs argue that Dr. Schachne was added well within the statutory period since the limitations did not begin to rum until December 1994. That being the case, Plaintiffs assert that the Rule 15 (c) analysis is not triggered. It is this argument with which the Court agrees. Having found that the Plaintiffs did not know of Dr. Schachne's conversation with Dr. Johnson until December 1994, it is inconsistent to rule that the statutory period against this defendant began to run at an earlier date. Therefore, as § 10-7-2 allows the statute of limitations to run three years from the date the act is or should have been discovered, this Court starts the clock from December 1994.
Given the above findings, Rule 15 (c) analysis is not required in this matter. The Plaintiffs argue that Rule 15 (c) only applied to those cases where Plaintiffs knew another Defendant was involved but did not know the name of that Defendant. In those cases, the Plaintiffs list any known defendants and include a "John Doe." The facts in this case, Plaintiffs argue, differ in that Plaintiffs did not know
another Defendant was involved. Therefore, Plaintiff contends that Rule 15 (c) does not apply.
After conducting its own research, the Court is of the opinion that the above argument is without support. There are cases, including Hall II, which conduct Rule 15 (c) analysis even where the later named defendant was not known to plaintiff. However, the Court does agree with Plaintiffs' basic conclusion that Rule 15 (c) does not always apply, and in fact is inapplicable here. The governing fact, however, is whether the party was added after the statute of limitations had run. If the statute had expired before the addition was made, the Court, after inquiring on the issue of due diligence, needs to conduct the two prong test asserted in Hall II. However, if the defendant was added in time, the test is not applicable. See3D Moore's Federal Practice 15-84 § 15.19[3][a]; Rys v. U.S.Postal Service, 886 F.2d 442 (1st Cir. 1989); U.S. v. Hato ReyBldg. Co., 886 F.2d 448 (1st Cir 1989). As this Court has already stated, the statute of limitations, as it pertains to Dr. Schachne, began to run in December 2994. As he was added in 1997, the statutory period had not yet elapsed.
This outcome, it seems to this Court, is not only the lawful result but also the most just. Law is simply an assemblage or rules written by the legislature. Justice is based on the integral relationship between the people and these rules. This case, like all cases, is a search for the truth and all parties involved should be present to represent and defend their positions. Based on the facts of this case, it would be unjust to determine Dr. Johnson's liability and exclude Dr. Schachne. The facts here turn on the diagnosis of decedent's condition and the two defendants conferred about that condition on the day before Peter Cotsoridis died. Therefore, after great thought, this Court finds that it must deny the Defendant's Motion for Summary Judgment and allow Dr. Schachne to remain a party in this suit.
[1] Rhode Island General Laws § 9-1-14.1 states:
 "an action for medical malpractice shall be commenced within three (3) years from the time of the occurrence of the incident which gave rise to the action; Providing however, that . . .
 (b) In respect to those injuries due to acts of medical malpractice which could not in the exercise of reasonable diligence be discoverable at the time of the occurrence of the incident which gave rise to the action, suit shall be commenced within three (3) years of the time that the act or acts of medical malpractice should, in the exercise of reasonable diligence have been discovered."
The purpose of § 9-1-14.1 seems to be the barring of medical malpractice claims in situations where the injuries do not manifest themselves until a later date. In this case the injury is clearly known and it occurred on a date certain. The controversy before this Court centers instead on Plaintiffs diligence in ascertaining the appropriate defendants. Therefore § 9-1-14.1 is not applicable.
[2] Dr. Johnson's Progress Notes dated 8/4/93 state "call Dr. Schacne for Appt." [Sic] and later on that same day, "Called Dr. Schacne" [Sic].